1   LAW OFFICES OF ANDREW L. PACKARD
    Andrew L. Packard (Bar No. 168690)
2   319 Pleasant Street
3   Petaluma, California 94952
    Tel. (707) 763-7227
4   Fax. (707) 763-9227
    Email: andrew@packardlawoffices.com
5
6   LAWYERS FOR CLEAN WATER, INC.
7   Daniel Cooper (Bar No. 153576)
    Martin McCarthy (Bar No. 194915)
8   1004A O'Reilly Avenue
9   San Francisco, California 94129
    Telephone: (415) 440-6520
10  Facsimile: (415) 440-4155
11  Email: cleanwater@sfo.com

12  Attorneys for Plaintiff
13  SANTA MONICA BAYKEEPER

14

15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16              **WESTERN DIVISION- LOS ANGELES**

17

18  SANTA MONICA BAYKEEPER,          Case No.CV-07-03856 DDP (FMOx)
    a non-profit corporation,
19                                    Hon. Dean D. Pregerson
20          Plaintiff,
       v.                            ~~[Proposed]~~
21                                   **CONSENT DECREE** AND
                                     ORDER
22  INTERNATIONAL METALS EKCO, LTD.  **(Federal Water Pollution Control Act,
                                     33 U.S.C. § 1251 et seq.)**
23          Defendant.

24

25  / / /

26  / / /

27  / / /

28
    ───────────────────────────────────────────────
    [Proposed] Consent Decree          1          Case No. CV07-03856 DDP (FMOx)

**WHEREAS**, Santa Monica Baykeeper ("Baykeeper" or "Plaintiff") is a non-profit corporation dedicated to the preservation, protection and defense of the environment, the wildlife, and the natural resources of the Santa Monica Bay watershed and area receiving waters in Los Angeles County;

**WHEREAS**, International Metals Ekco, Ltd. ("Ekco Metals") is an Owner and/or Operator of the Ekco Metals scrap metal recycling Facility located at 2777 E. Washington Blvd., Los Angeles, California (hereinafter "Ekco Metals Facility" or the "Facility" or the "Site");

**WHEREAS**, Baykeeper contends that the Defendant's operations at the Ekco Metals Facility result in discharges of pollutants to storm drains, the Los Angeles River, and ultimately San Pedro Bay and the Pacific Ocean (collectively referred to as the "Receiving Waters") and Defendant's discharges are regulated by the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("CWA" or "Act"), Sections 301(a) and 402, 33 U.S.C §§ 1311(a), 1342;

**WHEREAS**, on 10 March 2007, Baykeeper served Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The 60-Day Notice alleged that the recipients had in the past and in fact continue to violate Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants into Receiving Waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit") and the Act;

**WHEREAS**, on 13 June 2007, Baykeeper filed a complaint against Defendant in the United States District Court, Central District of California (Civil Case No. CV 07-

03856 DDP (FMOx)) entitled *Santa Monica Baykeeper v. International Ekco Metals, Ltd.,* ("Complaint");

**WHEREAS**, on December 19, 2008, Plaintiffs filed a Notice of Motion and Motion for Partial Summary Judgment ("Motion") to establish Defendant's liability for violations of the Industrial Permit and the Clean Water Act at the Ekco Metals Facility;

**WHEREAS**, on February 27, 2009, the Court issued an order granting in part Plaintiff's Motion;

**WHEREAS**, Baykeeper and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, this Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**WHEREAS,** Defendant intends to continue industrial activities at the Ekco Metals Facility and will therefore need to undertake additional measures to control storm water pollution associated with continuing industrial activities;

**WHEREAS**, the Parties recognize that this Consent Decree calls for the implementation of structural BMPs and other methods of reduction of potential total mass emission of contaminants by methods the results of which are not entirely certain and acknowledge that achievement of the numeric limits called for by this Consent Decree may not be immediately achievable;

**AND WHEREAS**, the Parties recognize that Defendant's agreement to install sand filtration devices at the Facility's storm water discharge points constitutes the initial phase of an iterative compliance process, and that additional means of reducing potential

1  total mass emissions of contaminants may be necessary to meet Defendant's obligation to

2  achieve the numeric limits called for herein on or before July 15, 2012;

3      **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

4  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

5  **FOLLOWS:**

6      1.    The Court has jurisdiction over the subject matter of this action pursuant to

7  Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

8      2.    Venue is appropriate in the Central District Court pursuant to Section

9  505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the Ekco Facilities at which the

10  alleged violations took place is located within this District;

11      3.    The Complaint states a claim upon which relief may be granted against

12  Defendant pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

13      4.    Baykeeper has standing to bring this action.

14  **I.**    **OBJECTIVES**

15      5.    It is the express purpose of the Parties entering into this Consent Decree to

16  further the objectives set forth in Section 101 *et seq.* of the CWA, 33 U.S.C. § 1251 *et*

17  *seq.*, and to resolve those issues alleged by Baykeeper in its Complaint.  In light of these

18  objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the

19  provisions of this Consent Decree and to comply with the requirements of the Industrial

20  Permit and all applicable provisions of the CWA at the Ekco Facilities.  Specifically,

21  Receiving Water Limitation C(2) in the Industrial Permit requires that the Ekco Facilities

22  "not cause or contribute to the exceedence of an applicable water quality standard."

23  Effluent Limitation B(3) of the Industrial Permit requires that Best Management

24  Practices ("BMPs") be developed and implemented to achieve Best Available

25  Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").

26  Defendant is required to develop and implement BMPs necessary to comply with the

27

28

1  Industrial Permit's requirement to achieve compliance with BAT/BCT standards and
2  with Water Quality Standards.[1]

3  **II.    COMMITMENTS OF THE PARTIES**

4       **A.    Industrial Storm Water Pollution Control Measures**

5       6.    The storm water pollution control measures and contaminant reduction
6  provisions of this Consent Decree shall only apply to rainfall events up to and including
7  the 5 year 24 hour return period rain event ("Compliance Storm Event"), as defined by
8  the County of Los Angeles Hydrology Manual (January, 2006) with an assumed dry
9  antecedent condition, a total of 3.4 inches of rainfall over a 24-hour period and an
10 assumed triangular runoff hydrograph.  The Parties agree that any discharge of
11 stormwater and/or stormwater pollutants from the Ekco Metals Facility in connection
12 with a rainfall event that exceeds a Compliance Storm Event is not a violation of this
13 consent decree.

14      7.    Defendant shall, by the Effective Date of this Consent Decree, or by August
15 14, 2009, whichever is earlier, develop a BMP Plan to capture, filter, infiltrate,
16 evaporate, harvest, treat and/or store to prevent off-site discharge of industrial
17 stormwater generated during rain events up to and including the Compliance Storm
18 Event at the Ekco Metals Facility.  The BMP Plan may contain the following measures
19 listed herein, as appropriate, and Defendant shall develop and implement additional
20 measures, if necessary, to reduce contamination in storm water discharged from the Ekco
21 Metals Facility to levels below the numeric limits set forth in paragraph 12 below:

22

23      (a)    Materials Storage and Industrial Activities.  Placing sources of
24 contamination in covered containers or under cover with such areas contained by

25

26

27 ───────────────
   [1] Water Quality Standards means water quality criteria contained in the California Toxics Rule and the
28 Regional Water Quality Control Plan, Los Angeles Region ("Basin Plan").

berming or other containment sufficient to prevent the exposure of pollutants to storm water or rainwater and the runoff or discharge of pollutants;

(b)    Coating.  Coating structural sources of contamination (e.g. galvanized building roofs and siding);

(c)    Sweeping. Employing high efficiency sweeping in order to prevent the discharge of pollutants;

(d)    Harvesting and Storing Runoff.  Constructing and maintaining on-site retention facilities (such as retention ponds or swales, infiltration basins, baker tanks, sumps, cisterns, or dry wells/ injection wells) designed to hold and store all or a portion of the runoff generated by a 5 year return period storm event without any off-site discharge;

(e)    Infiltrating Runoff.  Creating pervious areas of the site to promote infiltration;

(f)    Infiltration Structure.  Collecting and routing storm water to a structure that is designed to be an infiltration structure (such as an infiltration basin or dry well/ injection well);

(g)    Treating Runoff.  Treating runoff discharging from the site.

(h)    Sand Filters.  The BMP Plan may include the installation of sand filters evaluated in the Caltrans Retrofit Study ("CRS") or equivalent treatment devices at appropriate locations.

(i)    Routing Discharge to the Publicly Owned Treatment Works.  Routing discharge to the publicly owned treatment works ("POTW")/ sanitary sewers, in combination with on-site retention such that flows are discharged off-peak in the POTW so as not to risk exacerbating wet weather Sanitary Sewer Overflow risks from the POTW.

(j)    Vehicle and Equipment Maintenance and Fueling.

1                  i.      Conducting all vehicle and equipment maintenance and fueling

2    at the Ekco Metals Facility on asphalt or another impermeable surface;

3                  ii.     Conducting all vehicle and equipment maintenance and fueling

4    at the Ekco Metals Facility under cover;

5                  iii.    Berming or otherwise containing the surface of the area where

6    vehicle maintenance and fueling occurs (hereinafter "Maintenance and Fueling Area") in

7    order to prevent the exposure of pollutants to storm water or rainwater and the runoff or

8    discharge of pollutants;

9                  iv.    Cleaning the Maintenance and Fueling Area as necessary to

10   control track-off of pollutants;

11                 v.     Dispensing with all petroleum products within the Maintenance

12   and Fueling Area(s);

13                 vi.    Installing tire washing facilities at exit points from the Ekco

14   Metals Facility to prevent off-site tracking from vehicles;

15         (k)    While Defendant may employ some of the methods listed above to

16   achieve compliance with CTR standards by the end of the Consent Decree period, it

17   agrees to install a sand filtering system as described in subsection (h) above for its non-

18   ferrous yard (Yard 3) prior to the beginning of the 2009-2010 wet season, to install

19   equivalent systems for Yards 1 and 2 by the end of the 2009 calendar year, and to re-coat

20   all galvanized building roofs and siding at the Facility by the end of the 2009 calendar

21   year.

22         8.     Defendant shall complete and provide the BMP Plan to Baykeeper for

23   review and comment by the Effective Date of this Consent Decree, or by August 14,

24   2009, whichever is earlier.  Baykeeper shall respond with comments within 30 days of

25   receiving the BMP Plan.  Within 15 days of receiving Baykeeper's comments, if any,

26   Defendant shall submit a final BMP Plan to Baykeeper, incorporating Baykeeper's

27   comments into the BMP Plan, or justifying in writing why any comment is not being

28

1   incorporated.  Defendant shall implement all BMPs in the BMP Plan at the Ekco Metals

2   Facility on or before October 1, 2009 (the start of the 2009-2010 wet season).  Any

3   disputes as to the adequacy of the BMP Plan shall be resolved pursuant to the dispute

4   resolution procedures of this Consent Decree, set out at paragraphs 27-30 below.

5        9.     As described in Section B below, beginning with the 2009-2010 wet season,

6   and for each year thereafter during the term of this Consent Decree, stormwater

7   discharges from any storm water discharge point or outfall located at the Ekco Metals

8   Facility occurring during rain events less than the Compliance Storm Event shall be

9   considered a breach of this Consent Decree if: (a) the pollutant concentrations in such

10   discharge exceed the numeric limits set forth in paragraph 12 below; (b) the

11   corresponding potential mass emission reductions described in paragraphs 13-14 below

12   are not achieved; and (c) the conditions of paragraph 15 below are not met.  Non-

13   stormwater discharges from the Containment Zone not authorized by the Industrial

14   Permit shall also be considered a breach of this Consent Decree, subject to the Force

15   Majeure provisions set forth in Paragraph 35 below.  Permitted Discharges to the

16   POTW/sanitary sewer, if any, shall not be considered a discharge from the Containment

17   Zone, and shall not be considered a breach of this Consent Decree.

18        **B.**    **NUMERIC LIMITS AND SAMPLING**

19        10.    <u>Sampling Program.</u> By the Effective Date, or by August 14, 2009,

20   whichever is earlier, Defendant shall develop a plan for the collection of storm water

21   samples during storm events that incorporates the requirements of this Consent Decree

22   and the Industrial Permit, including, but not limited to, the requirement to sample non-

23   storm water discharges for the Ekco Metals Facility ("Sampling Plan"), and which shall

24   specifically require sampling at all discharge points from the Ekco Metals Facility, and

25   all other new or additional discharge points created in the future.  Defendant agrees to

26   submit the Sampling Plan to Baykeeper for review and comment as soon as it is

27   completed but in any event no later than August 14, 2009.  Baykeeper shall provide

28

1   comments, if any, to the Defendant within 30 days of receipt of the Sampling Plan.

2   Any disputes as to the adequacy of the Sampling Plan shall be resolved pursuant to the

3   dispute resolution provisions of paragraphs 27 through 30.

4       11.   Sample Analysis and Sample Frequency. Beginning with the 2009/2010

5   wet season (defined as October 1- May 31) and continuing each wet season for the life

6   of this Consent Decree, Defendant shall collect samples from every storm event causing

7   a discharge from the Facility occurring from 7:00 a.m. to 6:00 p.m. Monday through

8   Friday, not including holidays when Ekco Metals is not operating, and from each

9   discharge location at the Facility upon such occurrence, until a minimum of four such

10   events per wet season have been sampled. Defendant shall analyze the samples for the

11   constituents identified in Table 1. Defendant may discontinue analyzing storm water

12   samples for a constituent specified in Table 1 at any Facility discharge point after four

13   consecutive sampling results for the constituent at that discharge point are reported as

14   below the Detection Limit for the analyses. A California State certified laboratory shall

15   perform all sample chemical analyses. Defendant shall select laboratories and

16   analytical limits such that, at a minimum, the method detection limits ("MDLs") shall

17   be at or below California Toxics Rule ("CTR") Levels set forth in Table 1 (based on

18   dissolved concentrations). In addition, Defendant shall perform sampling in the manner

19   required by the General Industrial Permit.

20       12.   Numeric Limits and Contaminant Reduction. During the 2009/2010 wet

21   season, Defendant shall achieve compliance with the Consent Decree by preparing the

22   BMP Plan and monitoring plan required under this Consent Decree. However, on or

23   before July 15, 2012, Defendant shall achieve compliance by showing that concentrations

24   of the contaminants listed in Table 1 that are discharged from the site are at or below the

25   California Toxics Rule ("CTR") CMC[2] limits and additional numeric limits (collectively

26

27   _____
[2] The CTR CMC limits are the California Toxics Rule (CTR) Criterion Maximum Concentrations

28   (CMC) from the Federal Register, Vol. 65, No. 97, May 18, 2000. Values differ for freshwater and

"Numeric Limits") set forth in Table 1 below:

**Table 1.   Numeric Limits**

| Contaminant | Numeric Limit[3] |
|---|---|
| Total suspended solids | 100 mg/L |
| Copper | 0.013 mg/L* |
| Lead | 0.065 mg/L* |
| Zinc | 0.120 mg/L* |
| Oil and grease | 15 mg/L |
| Aluminum | 0.750 mg/L |
| Arsenic | 0.340 mg/L* |
| Cadmium | 0.0043 mg/L* |
| Iron | 1.0 mg/L |
| Mercury | 0.0024 mg/L |
| Nickel | 0.470 mg/L* |
| Silver | 0.0034 mg/L* |
| Chemical oxygen demand | 120 mg/L |
| pH | 6.0-9.0 |
| Chromium (III) | 0.550 mg/L* |
| Chromium (VI) | 0.016 mg/L* |

13.   <u>Exceedances of Numeric Limits.</u>  If any sampling demonstrates discharges of stormwater containing a concentration of pollutants exceeding the Numeric Limits, as expressed immediately above, Defendant shall demonstrate within 180 days that the potential total mass emission of the contaminant has been reduced through a combination of decreases in its concentrations and reductions of the volume of the runoff discharged

saltwater discharges. Defendant shall use the value applying in the first Water of the State receiving its discharge. For metals the limits apply to the dissolved quantity, and hence defendant shall measure dissolved as well as total recoverable metals. In general, freshwater limits for metals depend on water hardness. Defendant shall measure the hardness in each discharge sample and use the resulting value as specified by the Federal Register to determine the specific CMC limits

[3] Note:  An * next to a Numeric Limit denotes a CTR Limit.  Compliance with the Numeric Limits for metals will be based on evaluation of dissolved concentrations only. CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65, No. 97, May 18, 2000, and being hardness dependant will vary with the analyzed total hardness of the water body.  The CTR Criterion Maximum levels expressed herein assume a total hardness of 100 mg/L.

from industrial activities.  Defendant agrees to submit a plan for additional contaminant reduction to Baykeeper for review and comment as soon as practicable and in any case within 30 days of receipt of sampling data demonstrating an exceedence.  Baykeeper shall provide comments, if any, to the Defendant within 30 days of receipt.  Defendant shall incorporate Baykeeper's comments in order to reduce the mass emission of the contaminant and initiate implementation of the reduction within 30 days of receipt for completion within 60 days of receipt, or as otherwise agreed between Baykeeper and Defendant.  If any of Baykeeper's comments are not utilized, Defendant shall justify in writing why any comment is not being incorporated within 30 days of receiving the comments.  Any disputes as to the adequacy of the mass emission reduction plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at Paragraphs 27 through 30 below.  The baseline for mass emissions reductions calculations, consisting of the geometric mean of all concentrations of stormwater contaminants sampled by Baykeeper and sampled by Defendant prior to the Effective Date, is as follows:

**Table 2.  Geometric Mean of Contaminants That Exceed Numeric Limits**

| Contaminant | Geometric Mean |
| --- | --- |
| Copper | 0.514 mg/L |
| Lead | 0.09 mg/L |
| Zinc | 0.425 mg/L |
| Oil and Grease | 32.42 mg/L |
| Chemical Oxygen Demand | 464 mg/L |
| Total Suspended Solids | 538 mg/L |

For the contaminants listed in Table 2 above, the demonstration that the potential total mass emission of a contaminant has been reduced shall be made as follows:

      a.     Determine the geometric mean of all concentrations of the contaminant measured before and after the Effective Date of the Consent Decree;

b.   Determine the site surface area discharging runoff containing the contaminant before and after this Effective Date;

c.   Multiply the geometric mean of concentrations and site surface area discharging before and after this Effective Date to obtain indicators of potential mass emission before and after this Effective Date; and,

d.   Show that the potential mass emission of the contaminant has decreased by the following amount:

| If the concentration exceeds the Numeric Limit by: | Then the potential total mass emission shall be reduced by: |
|---|---|
| 1-100% (i.e., up to 2 times the limit) | 50% |
| 101-200% (i.e., up to 3 times the limit) | 75% |
| 201-300% (i.e., up to 4 times the limit) | 95% |

14.   For the Contaminants listed in Table 3 below, for which inadequate baseline data is currently available for such Contaminants' inclusion in Table 2, or for which the geometric means are below the applicable Numeric Limits set out in Table 1, the following method shall be used to assess compliance with the Numeric Limits described above for any discharge point where storm water discharges occur during storm events smaller than the Design Storm Event.

a.   Based on existing site conditions (100 percent impervious surfaces and no storm water infiltration or diversion) and the amount of rainfall that falls on the Facility during each of the monitored storm events described, the volume of water that would have discharged from the Facility prior to installation of the filtration and/or diversion measures shall be calculated.

b.   Using the Numeric Limits described above, the mass of "allowable" pollutants will be calculated (volume of water assuming no filtration/diversion multiplied by the Numeric Limits) for each listed constituent.

c.    The actual contaminant mass discharged for each of the pollutants listed above will be calculated (volume of water actually discharged multiplied by the analytical results for storm events where discharges occur);

d.    For each of the monitored storm events, the calculated mass of actual contaminants discharged under subparagraph (c) above will be compared to the mass of allowable contaminants calculated under subparagraph (b) above.

**Table 3.**

| Contaminant | Geometric Mean[4] |
|---|---|
| Mercury | 0.00037 mg/L |
| Chromium (III) | Insufficient Data |
| Chromium (VI) | Insufficient Data |
| Arsenic | 0.0073 mg/L |
| Cadmium | 0.0035 mg/L |
| Aluminum | 0.576 mg/L |
| Silver | 0.00047 mg/L |
| Nickel | 0.031 mg/L |
| Iron | 0.970 mg/L |

15.    <u>Numeric Limits and Breach</u>.  If any sample taken during the duration of this Consent Decree reveals an exceedence of an applicable Numeric Limit without the corresponding subsequent demonstration of significant reduction in mass emissions Defendant shall be in breach of this Consent Decree.  However, the Parties agree that Baykeeper will not enforce any breach of this Consent Decree for failure to meet applicable numeric limits and failure to demonstrate significant reduction of mass emissions of contaminants until the conclusion of this Consent Decree, provided that Defendant makes consistent progress towards achievement of the numeric limits during the duration of this Consent Decree.  If Baykeeper is dissatisfied with Defendant's

---

[4]  The references in Table 3 to "Insufficient Data" indicate that the combined storm water discharge sampling data currently available to Coastkeeper lack at least three sample results that are above the reporting limit for that contaminant from which to calculate the geometric mean.

1   progress towards achievement of the numeric limits set by this Consent Decree,

2   Baykeeper may elect to invoke the dispute resolution procedures outlined in paragraphs

3   27-30 below.

4       **C.**    **STORM WATER POLLUTION PREVENTION PLAN**

5       16.    SWPPP Revisions.  By the Effective Date of this Consent Decree, Defendant

6   agrees to revise the SWPPP currently in effect at the Ekco Metals Facility in accordance

7   with this Consent Decree and the SWPPP requirements of the General Industrial Permit.

8       17.    Baykeeper's Review of Revised SWPPP.  Defendant shall submit one copy

9   of the revised SWPPP to Baykeeper by the Effective Date of this Consent Decree.

10       a.    Within thirty (30) days of Baykeeper's receipt of the revised SWPPP,

11   Baykeeper shall provide Defendant with comments and suggestions, if any, concerning

12   the revisions to the SWPPP.

13       b.    Within fifteen (15) days of Defendant's receipt of Baykeeper's

14   comments on the revised SWPPP, if any, Defendant shall incorporate Baykeeper's

15   comments and re-issue the SWPPP, or justify in writing why any of Baykeeper's

16   comments are not incorporated in the re-issued SWPPP.

17       c.    If Baykeeper is dissatisfied with the SWPPP after re-issuance

18   pursuant to paragraph 17(b) above, Baykeeper may, within sixty (60) days of

19   Baykeeper's receipt of the SWPPP, elect to invoke the dispute resolution procedures

20   outlined in paragraphs 27-30 below.

21       **D.**    **MONITORING AND REPORTING**

22       18.    Site Inspections.  For the first two years of the term of this Consent Decree,

23   Baykeeper's Water Quality Engineer, accompanied by Baykeeper's attorney or other

24   representative, may conduct up to three yearly Site Inspections at the Ekco Metals

25   Facility and may conduct up to two Site Inspections each year thereafter.  The Site

26   Inspections shall occur during normal business hours and Baykeeper shall provide

27   Defendant with forty-eight (48) hours' notice prior to each inspection.  If an inspection is

28

1  to take place on a Monday, Baykeeper shall provide written notice not later than 10:00
2  a.m. on the preceding Friday during normal business hours. During the Site Inspections,
3  Baykeeper and/or its representatives shall be allowed access to the Ekco Metals Facility's
4  SWPPP and monitoring records and to all monitoring reports and data for the Ekco
5  Metals Facility. During the Site Inspections, Baykeeper and/or its representatives may
6  collect samples of storm water discharges at the Ekco Metals Facility. A certified
7  California laboratory shall analyze storm water samples collected by Baykeeper.
8  Baykeeper shall make every reasonable effort to ensure that its inspections are scheduled
9  in such a manner as to allow Defendant's compliance officer to be present at all
10 inspections.

11      19.   Compliance Monitoring and Oversight. Defendant agrees to help defray
12 Baykeeper's reasonable anticipated costs incurred in conducting Site Inspections and
13 other compliance monitoring and oversight by reimbursing Baykeeper in the amount of
14 $10,000 pursuant to the payment terms set forth in Paragraph 23 below.

15      20.   Reporting. During the life of this Consent Decree, on a monthly basis,
16 Defendant shall provide Baykeeper with a copy of all compliance and monitoring data,
17 including inspection reports, related to the Ekco Metals Facility. During the life of this
18 Consent Decree, Defendant shall provide Baykeeper with all laboratory analyses related
19 to the Ekco Metals Facility within fifteen (15) days of Defendant's receipt of such
20 information.

21      21.   Document Provision. During the life of this Consent Decree, Defendant
22 shall copy Baykeeper on all documents related to water quality at the Ekco Metals
23 Facility that are submitted to the Regional Board, the State Board, and/or any State or
24 local agency or municipality. Such reports and documents shall be provided to
25 Baykeeper concurrently as they are sent to the agencies and/or municipalities.

26      **E.    ENVIRONMENTAL PROJECTS; FEES; PAYMENT SCHEDULE**

27

28

22.     <u>Environmental Mitigation Project.</u>  Defendant agrees to pay One Hundred
Forty-five Thousand Dollars ($145,000) to the Santa Monica Bay Restoration Foundation
for use in a supplemental environmental project to eliminate or mitigate the impacts of
storm water pollution to California watersheds receiving discharges from the Ekco
Metals Facility.  Defendant shall make the mitigation payment pursuant to the payment
terms set forth in Paragraph 23 below.

23.     <u>Baykeeper's Fees and Costs.</u>  Defendant agrees to reimburse Baykeeper for
Baykeeper's investigation fees and costs, expert fees and costs, reasonable attorneys'
fees, and other costs incurred as a result of investigating and preparing the lawsuit, and
negotiating a resolution of this matter, totaling $299,500.00.  Pursuant to Paragraphs 19,
22, and 23 herein, Defendant agrees to remit a total of $454,500.00 to Plaintiff, which
funds shall be due in six equal monthly installments in the amount of $75,750.00.  The
first payment shall be due upon execution of this Consent Decree, and payments shall be
made thereafter on the first of each month beginning July 1, 2009 through November 1,
2009.  Each such payment shall be made payable to "Lawyers for Clean Water Attorney-
Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers
for Clean Water, Inc., 1004A O'Reilly Avenue, San Francisco, California 94129 attention
Layne Friedrich.  In the event that any payments owed by Defendant under this Consent
Decree is not remitted to Plaintiff or post-marked on or before its due date, Defendant
shall be deemed to be in default of its obligations under this Consent Decree.  Plaintiff
shall provide written notice to Defendant of any default; if Defendant fails to remedy the
default within two (2) business days of such notice, then Defendant shall pay interest at
10% per annum accruing on unpaid balances beginning on the due date of the funds in
default and continuing until the unpaid balance and the accrued interest are paid.

**F.      STIPULATED PAYMENT**

24.     Defendant shall make a remediation payment of One Thousand Dollars
($1,000) for each missed deadline included in or contemplated by this Consent Decree,

1   unless the missed deadline results from a Force Majeure Event. Payments for missed
2   deadlines shall be made to Santa Monica Bay Restoration Foundation for the restoration
3   and/or improvement of the watershed in the area affected by the missed deadline.
4   Defendant agrees to make the stipulated payment within thirty (30) days of a missed
5   deadline via certified mail or overnight delivery to: Santa Monica Bay Restoration
6   Foundation, 320 West 4th Street, Suite 200, Los Angeles, CA 90013. Defendant shall
7   provide Baykeeper with a copy of each such payment.

**G.    COMMITMENTS OF PLAINTIFF**

25.    Stipulated Dismissal. Within ten days of the Execution of this Consent
Decree by the Parties, Baykeeper shall file this [Proposed] Consent Decree with the
United States District Court for the Central District of California ("District Court").

26.    Review by Federal Agencies. Plaintiff shall submit this Consent Decree to
EPA and the U.S. Department of Justice ("DOJ") within three court days of the execution
of this Consent Decree for review consistent with 40 C.F.R. § 135.5. In the event that
EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties
agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

**H.    DISPUTE RESOLUTION**

27.    This Court shall retain jurisdiction over this matter for the purposes of
implementing and enforcing the terms and conditions of this Consent Decree and
adjudicating all disputes among the parties that may arise under the provisions of this
Consent Decree. The Court shall have the power to enforce this Consent Decree with all
available legal and equitable remedies, including contempt.

28.    Meet and Confer. A party to this Consent Decree shall invoke the dispute
resolution procedures of this Section by notifying all other Parties in writing of the
matter(s) in dispute and of the party's intention to resolve the dispute under this Section.
The Parties shall then meet and confer in an attempt to resolve the dispute informally
over a period of thirty (30) calendar days from the date of the notice.

29.     If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party invoking the dispute resolution provision shall provide notice to the other party that it intends to invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

30.     If Baykeeper initiates a motion or proceeding before the Court relating to enforcement of the terms and conditions of this Consent Decree, Baykeeper shall be entitled to recover reasonable fees incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §1365 and § 1319.

**III.     RETENTION OF JURISDICTION AND TERMINATION**

31.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree filed within sixty (60) days after completion of the obligations set forth in the Consent Decree.  This Consent Decree shall terminate on September 30, 2012.

**IV.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

32.     In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendant's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

33.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendant.

1 | V.    **MISCELLANEOUS PROVISIONS**

2 |     34.    Neither the Consent Decree nor any payment pursuant to the Consent Decree
3 | shall constitute or be construed as a finding, adjudication, or acknowledgment of any fact,
4 | law, or liability, nor shall it be construed as an admission of violation of any law, rule, or
5 | regulation.  Defendant maintains and reserves all defenses it may have to any alleged
6 | violations that may be raised in the future.

7 |     35.    Force Majeure.  Force Majeure includes any act of God, war, fire,
8 | earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism,
9 | sabotage or terrorism; restraint by court order or public authority or agency; or action or
10 | non-action by, or inability to obtain the necessary authorizations or approvals from any
11 | governmental agency.  Force Majeure shall not include normal inclement weather,
12 | economic hardship or inability to pay.  Any party seeking to rely upon this paragraph to
13 | excuse or postpone performance, shall have the burden of establishing that it could not
14 | reasonably have been expected to avoid and which by exercise of due diligence has been
15 | unable to overcome the failure of performance.  Defendant shall exercise due diligence to
16 | resolve and remove any force majeure event.

17 |     36.    Construction.  The language in all parts of this Consent Decree shall be
18 | construed according to its plain and ordinary meaning, except as to those terms defined in
19 | the Industrial Permit, the Clean Water Act, or specifically herein.

20 |     37.    Choice of Law.  The laws of the United States shall govern this Consent
21 | Decree.

22 |     38.    Severability.  In the event that any provision, paragraph, section, or sentence
23 | of this Consent Decree is held by a court to be unenforceable, the validity of the
24 | enforceable provisions shall not be adversely affected.

25 |     39.    Correspondence.  All notices required herein or any other correspondence
26 | pertaining to this Consent Decree shall be sent by regular, certified, or overnight mail as
27 | follows:

28 |

<u>If to Plaintiff:</u>

Daniel G. Cooper, Esq.
Samantha Williams, Esq.
Lawyers for Clean Water, Inc.
1004 O'Reilly Ave.
San Francisco, CA 94129

With copies to:
Santa Monica Baykeeper
120 Broadway, Suite 105
Santa Monica, CA 90401

<u>If to Defendant</u>:
Jason M. Booth
Dongell Lawrence Finney LLP
707 Wilshire Blvd., 45th Floor
Los Angeles, CA 90017

With copies to:
Ely Keenberg
International Ekco Metals, Ltd.
2777 E Washington Blvd.
Los Angeles, CA 90023

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Parties may agree to transmit documents electronically or by facsimile.

40.    <u>Effect of Consent Decree</u>. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the

obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

41.  Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

42.  Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

43.  Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

44.  Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

45.  Authority. The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

46.  The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

47.  The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

1        48.    The term "Effective Date," as used in this Consent Decree, shall mean the

2    date of expiration of the 45-day review period for the Federal agencies set forth under

3    paragraph 26 of this Consent Decree.

4        The undersigned representatives for Baykeeper and Defendant each certify that

5    he/she is fully authorized by the party whom he/she represents to enter into the terms and

6    conditions of this Consent Decree and that this Consent Decree binds that party.

7    / / /

8    / / /

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

IT IS SO ORDERED

DATED: 8-25-09

JUDGE DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

LAWYERS FOR CLEAN WATER, INC.

Dated: _30_ June 2009

_____
Daniel Cooper
Andrew L. Packard
Law Offices of Andrew L. Packard

Attorneys for Plaintiff
Santa Monica Baykeeper

SANTA MONICA BAYKEEPER

Dated: _30_ June 2009

by: _____
Tom Ford
Santa Monica Baykeeper

DONGELL LAWRENCE FINNEY, LLP

Dated: _____ June 2009

_____
Jason M. Booth
Attorneys for Defendant
International Metals Ekco, Ltd.

INTERNATIONAL METALS EKCO, LTD

Dated: _____ June 2009

by: _____
Ely Keenberg
International Metals Ekco, Inc.

[Proposed] Consent Decree      23      Case No. CV07-03856 DDP (FMOx)

1      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as

2   of the date first set forth above.

3                                          LAWYERS FOR CLEAN WATER, INC.

4

5   Dated: _____ June 2009

6                                          _____
                                           Daniel Cooper
7                                          Andrew L. Packard
                                           Law Offices of Andrew L. Packard
8
                                           Attorneys for Plaintiff
9                                          Santa Monica Baykeeper

10

11                                         SANTA MONICA BAYKEEPER

12

13

14  Dated: _____ June 2009              by: _____
                                           Tom Ford
15                                         Santa Monica Baykeeper

16

17                                         DONGELL LAWRENCE FINNEY, LLP

18

19  Dated: _2-9_ June 2009

20                                         Jason M. Booth
                                           Attorneys for Defendant
21                                         International Metals Ekco, Ltd.

22

23                                         INTERNATIONAL METALS EKCO, LTD

24

25  Dated: _26ᵗʰ_ June 2009               by: _____
                                           Ely Keenberg
26
                                           International Metals Ekco, Inc.
27

28
    [Proposed] Consent Decree          23          Case No. CV07-03856 DDP (FMOx)